## Procter v. Louisville & Nashville Railroad Company.

## McCormack, et al. v. Louisville & Nashville Railroad Company.

(Decided December 16, 1913).

### Appeal from Warren Circuit Court.

1. Finding of Chancellor.—Where the proof is contradictory and the mind is left in doubt upon a question of fact, the finding of the chancellor will not be disturbed.

2. Attorneys' Fees—Lien For—Section 107 Kentucky Statutes.—Section 107 of the Kentucky Statutes, which gives attorneys a lien upon claims put in their hands for collection, was not intended to deny to parties to an action the right to settle their differences independent of their attorneys, and without notice to them; but, if the parties to the action do so settle their differences, and money or other thing of value is paid by the defendant to the plaintiff as a consideration for the settlement, the attorney for the plaintiff may recover from the defendant a reasonable fee for his services.

3. Attorneys' Fees—Settlement of Case Without Consent of Plaintiff's Attorney.—Where the plaintiff in an action for damages for personal injuries settles the case with the defendant without the consent or assistance of the plaintiff's attorney, the defendant's

obligation is to pay to the attorney for the plaintiff the fee which the plaintiff would have had to pay to his attorney.

4.  Attorneys' Fees—Settlement by Plaintiff—Liability of Defendant. —Where an attorney .instituted an action for damages for personal injuries to the plaintiff, under a contract for a fee equivalent tõ one-third of whatever should be received for said injuries, and the plaintiff settled the case for $10,000.00, the defendant was liable to the plaintiff's attorney for $3,333.33, that sum being equivalent to one-third of the amount received by the plaintiff.

5.  Practice—Rule Deliberately Adopted Should Not Be Disturbed.— When a rule has been once deliberately adopted and declared by the courts, it ought not to be disturbed unless by a court of appeal or review, and never by the same court, except for very urgent reasons, and upon a clear manifestation of error.

B. F. PROCTOR, GRIDER & HARLIN, O'REAR & WILLIAMS and WRIGHT & McELROY for appellants.

SIMS & RODES and BENJAMIN D. WARFIELD for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

These appeals involve only the fees for services rendered by Dr. A. T. McCormack as a physician, and by B. F. Procter as an attorney, in the action of R. E. Lynch against the Louisville & Nashville Railroad Company for personal injuries.

Having been injured in a collision upon appellee's road at Rockland, Tennessee, Lynch and his brother-in-law, Niemeyer, made the following contract of employment with Procter:

"This obligation witnesseth, that I have employed B. F. Procter to adjust by suit or compromise a claim for myself and for E. B. Niemeyer for an injury done to us at Rockland, Tennessee, March 13, 1907, in a collision; he is also to represent a claim for malpractice in treatment of said Niemeyer. It is agreed that we will give all assistance in case of the prosecution of said claim, and for his services we and each of us will pay to said Procter a sum equal to one-fourth (1-4) received for said injury if compromised before trial, but if a trial is gone into then said Procter is to prosecute said claim in all courts in which it is pending, and for his services he is to receive a sum equal to one-third (1-3) received for said injuries.

"If nothing is received he is to receive nothing for his services.

"This November 26th, 1907.
            "R. E. LYNCH,
            "E. B. NIEMEYER, per R. E. Lynch."

Acting for Lynch, appellant Procter instituted a suit against the appellee in the Warren Circuit Court and recovered a judgment for $25,000.00, which was reversed by this court in 137 Ky., 696.

After the case had been remanded to the lower court for a new trial, and before another trial was had, Lynch, acting alone, compromised his case for $10,000, as is shown by the following receipt given by him:

"Received of the Louisville & Nashville Railroad Company ten thousand ($10,000.00) dollars in full compromise, settlement and adjustment of all claims and demands of every character whatsoever, which I have against said company, its officers, agents or employees on account of injuries received by me on or about the 13th day of March, 1907, at or near Rockland, Tennessee, and on every other account whatsoever.

"I hereby agree to dismiss settled my action now pending against said company in the Warren Circuit Court to recover damages on account of said injuries; the Louisville & Nashville Railroad Company to pay the legally taxable cost of the litigation which it has not heretofore paid.

"Witness my hand at Louisville, Ky., this May 21, 1910."

The company paid Lynch the $10,000.00 called for by the settlement, whereupon McCormack and Procter intervened in this action claiming their fees, and a lien therefor. Recognizing its liability under section 107 of the Kentucky Statutes, which gives attorneys a lien upon all claims or demands, including all claims for unliquidated damages, put into their hands for suit or collection, for the amount of any fee which may have been agreed upon by the parties, the company offered to pay Procter $2,500.00, that sum being one-fourth of the amount which the company had paid Lynch. Procter, however, claimed that he was entitled to $5,000.00, since the settlement had been made after trial, in which event he was, by the terms of his contract, entitled to one-third of the recovery; that in paying Lynch $10,000.00, the company had paid Lynch only that part of the recovery which was due him, and that the remaining one-third, or $5,000, was due Procter under the contract.

The circuit court having held that Procter was entitled to a fee of $3,333.33, the company paid him that sum. Procter appeals, claiming that he was entitled to $5,000.00, and that there is yet due him, $1,666.67.

Before the trial of the action in the circuit court Dr. A. T. McCormack and another physician were appointed by the court to make a physical examination of Lynch for the purpose of preparing themselves to testify concerning his injuries. Dr. McCormack made the examination, and testified; and for his services he claimed $250.00. The circuit court allowed him a fee of $50.00, which was taxed as costs, and paid by the company; and from so much of the judgment as denied him a recovery of the remaining $200.00, Dr. McCormack appeals.

Disposing of Dr. McCormack's appeal first, it is sufficient to say that while several witnesses testified that $250.00 was a reasonable fee for the services he rendered, at least two physicians testified that $50.00 was a reasonable fee.

This question of fact having been tried by the circuit judge, who knew the witnesses and heard them testify, we are not inclined to disturb his finding. Where the proof is contradictory and the mind is left in doubt upon a question of fact, this court will not disturb the finding of fact by the chancellor. Byassee v. Evans, 143 Ky., 415; Kirkpatrick's Exor. v. Rehkopf, 144 Ky., 134; Wathen v. Wathen, 149 Ky., 505; Bond v. Bond, 150 Ky., 302.

The judgment is, therefore, affirmed upon Dr. McCormack's appeal.

Turning to Procter's appeal, we find he relies upon L. & N R. R. Co. v. Procter, 21 Ky. L. R., 447, 51 S. W., 591; The Proctor Coal Co. v. Tye & Denham, 123 Ky., 381, and Elk Valley Coal Mining Co. v. Willis, 149 Ky., 449, for a reversal of the judgment which passed upon his claim.

A careful reading of the opinions in those cases will show, however, that none of them comes up to the position contended for by appellant. A brief examination of those opinions will show that fact.

In the first case, in 21 Ky. L. R., 447, the plaintiff had recovered a judgment for $1,000.00 against the railroad company, and subsequently compromised it for $300.00. In that case Procter, the plaintiff's attorney, had a contract for a fee of one-half of the amount recovered; and the effect of the opinion was, that where a client had compromised a claim which had already been reduced to judgment, by accepting less than the judgment in satisfaction thereof, his act in so settling his judgment did not deprive the attorney of his fee according to his

contract, when applied to the existing judgment. In that case the judgment was in force, and it was, therefore, a correct measure of the company's liability. In the case at bar, however, Lynch had no judgment at the time he made the settlement; and the fact that he had previously recovered a judgment which had been reversed, cannot affect the question. When the case went back to the circuit court for trial, so far as Lynch and his attorney were concerned, it stood as though he had never recovered a judgment, and as though his suit had just been brought and was awaiting trial for the first time.

In Proctor Coal Co. v. Tye & Denham, *supra,* the case was compromised by the plaintiff, Chandler, before trial; and the attorneys having no express contract as to the amount of their fee, they were allowed to recover upon a *quantum meruit.* It appeared, however, that although the plaintiff had received but a small sum of money, he obtained a contract by which he was to be given employment by the defendant company as long as it remained in existence. The court held that the attorneys were entitled, in fixing their fee upon a *quantum meruit* basis, to show the value of the contract between the company and Chandler for future employment.

And, in speaking of the effect of the statute giving attorneys a lien for their fees, the court said:

"This statute was not intended to deny to parties to an action the right to settle their differences independent of their attorneys, and without notice to them; but if they do so settle, and money or other thing of value is paid by the defendant to plaintiff as a consideration for the settlement, the attorney for plaintiff may recover from the defendant a reasonable fee for his services. Nor was it designed to prevent the compromise or settlement of lawsuits out of court by the parties. The only purpose of it is to provide a means whereby attorneys who have been instrumental in bringing the settlement about, by reason of the claim being placed in their hands for collection, shall receive a reasonable compensation for the services they have rendered."

Again, in Elk Valley Coal Mining Co. v. Willis, Alexander, the plaintiff, settled his claim for $250.00 in money, a house and lot, and permanent employment in the service of the company. For a fee, the attorneys had a contract for a sum equivalent to fifty per cent. of the amount recovered by suit or otherwise. It will be seen that in this case, as in the Tye & Denham case, it became

necessary to determine what the recovery was, by ascertaining the value of the contract for future service and the house and lot, and that the attorneys were entitled to one-half of that sum. It will thus be seen that neither of these cases bears directly upon the case at bar.

The question presented by this appeal has, however, been squarely decided by this court in Schmitz v. South Covington & Cincinnati Street Railway Co., 131 Ky., 207. In that case Mrs. Linns, the plaintiff, employed Schmitz, an attorney, to prosecute a damage suit for her against the company under a contract to pay the attorney, as a fee, a sum equivalent to one-half of any sum that might be collected or recovered by suit, compromise or otherwise. After the suit had been instituted, and before trial, Mrs. Linns settled her case for $1,500.00, the company further agreeing as a part of the settlement, to pay Schmitz, her attorney, the fee agreed upon between him and Mrs. Linns. It will be observed that this is precisely the agreement the appellee in the case at bar made with Lynch as to paying Procter's fee. In the Schmitz case the company offered to pay Schmitz $750.00, that sum being one-half of the amount it had paid Mrs. Linns. Schmitz, however, contended that he was entitled to $1,500.00, under his contract for one-half of the recovery, just as Procter is claiming $5,000 in the case at bar under his contract for one-third of the recovery. In the Schmitz case, however, this court affirmed the judgment of the circuit court, which allowed Schmitz $750.00 instead of $1,500.00.

We are now asked to re-examine the question and to overrule the Schmitz case. The question in that case was, however, carefully considered and thoroughly argued, as fully appears from the opinion. The gist of the opinion and the reasons for the conclusion reached are found in the following extract taken from page 211 of that opinion:

"The attorney, independent of his client, had no cause of action whatever, against the company. His claim against it resulted entirely from his employment. If his client had no claim against the company, neither did the attorney. If the client did not recover anything, neither could the attorney. The amount of the attorney's recovery depended entirely upon the amount recovered by his client. He was to get a share or interest in whatever amount his client received, and hence in determining what the attorney was entitled to, we must

of necessity ascertain what the client secured, as the attorney is only entitled to one-half of that amount. The venture of the attorney and the client as between themselves may be treated as a partnership in the sense that the attorney was to receive an amount equal to one-half of the sum recovered by the client, but this partnership did not increase the liability of the company. Its obligation was to pay to the attorney the fee the client would have to pay—no more and no less—and it is clear that the client could only be required to pay one-half of the amount recovered. If the case had gone to trial, and a judgment had been rendered for $1,500.00, the client and attorney under the agreement would share equally in the recovery solely because the attorney was to get one-half of the recovery, and in this state of case the client would only receive $750.00; but, if a third party had come in and assumed to pay the attorney his fee, then the client would receive $1,500.00, and the attorney $750.00. It does not follow from the fact that, because the client received $1,500.00, the attorney is entitled to a like amount. The amount the attorney is entitled to receive is absolutely fixed by the amount paid to the client. If the attorney receives one-half the amount his client receives, it does not concern him whether he is paid that amount by his client or by some other person.''

And, as pointed out in that opinion, if the company had been insolvent, and the attorney could not for that reason have recovered any part of his fee from the company, clearly he could not have recovered more than $750.00 from his client; and as his claim against the company arises only from his employment by his client, it is difficult to understand how his claim can be any greater against the company than it could have been against his client.

In Cooley's Constitutional Limitations it is said, that when a rule has been once deliberately adopted and declared, it ought not to be disturbed unless by a court of appeal or review, and never by the same court, except for very urgent reasons, and upon a clear manifestation of error; and that if the practice were otherwise, it would be leaving us in a perplexed uncertainty as to the law. 7th Ed., page 84.

Upon the principle of *stare decisis,* the decisions which have been rendered by a court will be adhered to by such court in subsequent cases, unless there is something manifestly erroneous therein, or the rule or prin-

ciple of law established by such decisions has been changed by legislative enactment. 11 Cyc., 746.

And, while we are not unmindful of the salutary tendency of the rule *stare decisis,* we are at the same time not averse to re-examining a question which has been passed upon on a single occasion only, and has not established a rule of property. Montgomery County Fiscal Court v. Trimble, 104 Ky., 639.

We have, therefore, carefully re-examined the question decided in the Schmitz case; and being of opinion that the rule there announced is sound in every particular, it is approved and followed.

Judgment affirmed in each appeal.

DISSENTING OPINION BY JUDGE TURNER.

I must respectfully dissent from so much of the opinion of the court as holds the appellant, Procter, is only entitled to recover from appellee $3,333.33.

There is no disputed fact in the record, and in my view, no question of law presented; but really only a question of calculation.

The uncontradicted facts are that Procter and Lynch entered into the contract quoted in the opinion of the court; that the suit was instituted by Procter and diligently prosecuted; that there was a verdict for $25,000 which upon appeal to this court was reversed; that upon the return of the case to the lower court, and before another trial was had, negotiations looking to a settlement were pending between the attorneys for the parties; that at the very time Lynch made the settlement appellee had pending a proposition by it to settle the case for $15,000; that while that proposition was pending Lynch went to Louisville and settled with the appellee's attorney for $10,000 *net to him, Lynch, with the agreement at the time that the company would pay Procter under the terms of Lynch's contract with him, which contract was before the attorney for the appellee at the time the settlement with Lynch was made.*

In order that the circumstances may be fully understood I quote as follows from the uncontradicted testimony of Lynch as to this settlement. In answer to a question from Procter, he said:

"I went to Warfield's office in Louisville on my own free will and accord to make a settlement of this case. When I went—after talking over the matter sometime Mr. Warfield asked me as to the conditions of the con-

tract between you and I. I told him about the contract. He asked me if I had it with me. I told him I did, and he asked me if I had any objections to him reading it. I told him none whatever, and I showed him the contract, and after reading the contract, he offered to compromise for $10,000 net to me. He agreed to pay all legal taxable court costs, your part of the contract, and whatever the contract was with Wright & McElroy, and Dr. Hagan's bill. I told him, after looking over the contract that he drew up, that your name was not on there. He said your part would be paid according to the contract, and with his assurance that it would, I agreed to accept it.''

We have then, a corporation admitting a liability, in full possession of the fact that one-third of that liability is going to and payable to one party, and deliberately, with its eyes open and in full possession of all the facts, settling with another party two-thirds of that liability for $10,000, and agreeing to settle the remaining part of it with the other party; thereby by its own act fixing its liability to the third party at $5,000.

Suppose the liability had grown out of a contract instead of a tort, and suppose the contractual liability was payable two-thirds to one man and one-third to another, could it have by paying in full the one to whom was due the two-thirds, have reduced its liability to the other? In my mind there can be no difference in principle; if there had been a disputed contractual liability and it had fixed the amount of ultimate liability by settling with one who was only entitled to a part of the recovery, it would not thereafter be heard to say that it was not proportionately liable to the other party.

But it is argued that it is against the policy of the law not to permit a party to compromise or settle out of court his litigation even without the consent of his attorney, and that is true; but it is sufficient to say in this case that the client did not undertake to settle the *whole* liabilty of the defendant, but only to settle that part which was coming to Lynch, which under the terms of the contract was two-thirds. The company expressly agreed, with the contract before it, that it would settle with Procter; by the very terms of its settlement with Lynch it fixed the amount which it must pay to Procter. It may be very readily admitted that it was within the power of Lynch to have made a settlement of the *whole* liability at $10,000 without the consent of Procter, and

if he had done so it would have absolutely fixed Procter's fee at one-third of that amount; *but this he did not undertake to do.* On the contrary, he settled only what was coming *to him* under the contract; that is, he was paid $10,000 *net* with the agreement that the company, having the contract between him and Procter before it at the time, would settle with Procter; that is to say the company at the time agreed to pay Procter one-half as much as it had paid Lynch, because it knew from the very terms of the contract that Procter was entitled to that much.

The company admits its liability to Procter for a fee under the terms of this contract, and a majority of the court have determined that $3,333.33 is what it must pay, and that amount has been, as shown by the record, paid Procter.   Let us see by a simple calculation whether that is a compliance with the terms of the contract.   The company has paid Lynch $10,000; it has paid Procter $3,333.33; the aggregate of those sums is $13,333.33.   Has Procter received one-third of that liability which the company now admits?   Certainly not; he has only received one-fourth of it, and the terms of his contract have been violated over his protest.

In my view of this case the only question is, of what sum is $10,000 two-thirds?

I am of the opinion that appellant Procter is entitled to his $5,000 fee and that the case of Schmitz v. South Covington & Cincinnati Street Ry. Co., 131 Ky., 207, should be overruled.

As long as the rule therein laid down obtains, an easy opportunity is offered agents of corporations to procure from ignorant, dishonest, or improvident persons having claims against them, settlements which will defraud attorneys out of part of their just compensation, to say nothing of their contract rights.

While it is not the policy of the law to discourage settlements between litigants or to prevent a party from settling without the consent of his attorney, we all know as a matter of common experience that settlements made with a litigant in the absence of his attorney (the attorney of the other party being present) are not conducive, as a general rule, to fair or equitable adjustments.

The reference in the opinion to the doctrine of *stare decisis* can be viewed in no other light than as an apol-

ogy for the opinion in the Schmitz case; if that opinion was and is still right what necessity is there for invoking the doctrine of *stare decisis* to continue in force the unfortunate doctrine announced therein?

Judge Nunn concurs in this dissent.